UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.

PENNY HESS

Case No.: 8:22-cr-259-WFJ-AEP

**UNITED STATES' RESPONSE TO DEFENDANT'S MOTION TO EXCLUDE
CO-CONSPIRATOR STATEMENTS**

The Court should deny Defendant Penny Hess's Motion to Exclude Co-Conspirator Statements (Doc. 229). Co-conspirator Aleksandr Ionov's messages with Russian intelligence officers and his written reports to Russian intelligence officers concerning the U.S. groups that he worked with were an integral part of this conspiracy, providing the FSB with the information needed to "utilize" the Defendants to, in their own words, "s[o]w division inside the U.S." Furthermore, separate and apart from the content of these communications, they are admissible as non-hearsay to establish that Ionov's work with these U.S. groups was done on behalf of the FSB, an arm of the Russian government, which is an essential element of the charged crimes.

I. **Ionov's Communications with, and Reports to, the FSB**

The Superseding Indictment alleges:

> From at least as early as October of 2013, ALEKSANDR VIKTOROVICH IONOV worked with officers of the Federal Security Service of the Russian Federation ["FSB"] . . . to use members of various U.S. political groups as foreign agents of Russia within the United States. Working under FSB supervision and with FSB support, IONOV recruited members of these political groups within the United States and other

> countries . . . Thereafter, IONOV exercised direction or control over these groups on behalf of the FSB. IONOV also monitored and regularly reported on their activities to the FSB.

Superseding Indictment ¶ 1. The Superseding Indictment further alleges that it was a "manner and means" of the conspiracy that "IONOV would and did communicate through encrypted electronic messaging applications and in-person meetings with POPOV, SUKHODOLOV, [MITYAGIN], [VISTOROPSKIY], and others for the purpose of developing and executing a plan to recruit, fund, and direct U.S. Political groups, including the APSP, Black Hammer, and U.S. Political Group 3," and that IONOV compiled information on these activities into reports for the FSB. *Id.* ¶ 26(b), (g). The Superseding Indictment also alleges that Ionov committed several overt acts in furtherance of the conspiracy by drafting reports on the APSP's and Black Hammer's activities to the FSB. *See* Overt Acts ¶¶ 59-65, 67, 72, 82.

At trial, the United States intends to introduce approximately twenty exhibits containing translated WhatsApp messages between Ionov and his FSB handlers: Popov, Sukhodolov, Mityagin, and Vistoropskiy. These messages relate to, among other things, Ionov's work for the FSB, the general provision of information about the U.S. political groups named in the Superseding Indictment, and coordination of protests, articles, and other activities that the APSP, Black Hammer, and other U.S. political groups were engaging in at Ionov's direction. The United States also intends to introduce approximately twenty reports that Ionov drafted for the FSB concerning these same topics. Many of these reports and communications discuss actions that the APSP, Black Hammer, and other U.S. groups took at Ionov's direction. The

United States will prove through independent evidence, including photographs, videos, emails, text messages, and publications, that the APSP and Black Hammer in fact committed some of the acts described and pictured in Ionov's reports.

## II. Legal Standard

Hearsay is an out-of-court statement that is offered in evidence "to prove the truth of the matter asserted." Fed. R. Evid. 801(c). Federal Rule of Evidence 801(d)(2)(E) provides that a statement is not hearsay if it "is offered against an opposing party" and "was made by the party's coconspirator during and in furtherance of the conspiracy."

In order for evidence to be admissible under Rule 801(d)(2)(E), the government must prove by a preponderance of the evidence: (1) that a conspiracy existed; (2) that the conspiracy included the declarant and the defendant against whom the statement is offered; and (3) that the statement was made during the course and in furtherance of the conspiracy. *United States v. Miles*, 290 F.3d 1341, 1351 (11th Cir. 2002). In making that determination, "the district court may rely on information provided by the co-conspirator's proffered statement as well as independent external evidence." *Id.* The district court "has discretion to admit the statements preemptively subject to later proof of the three requirements during the course of the trial." *United States v. Wenxia Man*, 891 F.3d 1253, 1271 (11th Cir. 2018) (marks omitted and alterations adopted).

The Eleventh Circuit has repeatedly held that courts must apply "a liberal standard in determining whether a statement is made in furtherance of a conspiracy."

*Miles*, 290 F.3d at 1351 (quoting *United States v. Santiago*, 837 F.2d 1545, 1549 (11th Cir. 1989)). "[T]he statement need not be necessary to the conspiracy, but must only further the interests of the conspiracy in some way." *Wenxia Man*, 891 F.3d at 1271.

For example, "[s]tatements made to solicit membership or participation in the conspiracy and statements explaining the conspiracy to a new member are made in furtherance of the conspiracy." *Miles*, 290 F.3d at 1351. Additionally, "statements that could have been intended to affect future dealings between the parties, that provide reassurance, that serve to maintain trust and cohesiveness, or that inform other conspirators of the current status of the conspiracy satisfy this standard." *Wenxia Man*, 891 F.3d at 1271 (internal marks omitted and alterations adopted). The Eleventh Circuit has repeatedly recognized that "boasting or bragging is in furtherance of a conspiracy if the statements are directed at obtaining the confidence or allaying the suspicions of a co-conspirator." *United States v. Siegelman*, 640 F.3d 1159, 1181 (11th Cir. 2011); *United States v. Santiago*, 837 F.2d 1545, 1549 (11th Cir. 1988) (same); *United States v. Miller*, 664 F.2d 94, 98 (5th Cir. 1981) ("Puffing, boasts, and other conversation, however, are admissible when used by the declarant to obtain the confidence of one involved in the conspiracy.").

### III. Analysis

The evidence at trial will establish that Omali Yeshitela, Augustus Romain, Penny Hess, and Jesse Nevel ("the Defendants") entered into a conspiracy with Ionov and his Russian-government backers to act as agents of the Russian government without notification of the Attorney General. The United States has

proffered substantial evidence in support of the existence of this conspiracy in prior filings. *See generally* Doc. 207 at 5-16 and attachments. To take just one example, in a series of September 2015 emails, the Defendants reduced their conspiratorial agreement to writing, recognizing that they would be one of many "forces inside of the U.S." who the Russian government, through Ionov's "Anti-Global Movement," would "utilize . . . to s[o]w division inside the U.S." Doc. 207-1 at 1.

The Defendants argue that Ionov's communications with the FSB were not in furtherance of the conspiracy because, based on a selective reading, a small handful of the reports and messages contained what the Defendants believe to be inaccurate information. To begin with, whether the content of the reports and messages is accurate is an issue for the jury to decide, and this issue is not relevant to their admissibility. Indeed, then-District Judge Stanley Marcus rejected this argument, explaining his reasoning as follows:

> Defendant's argument falls wide of the mark. The preliminary question concerning admissibility does not turn on the witness['s] belief as to the truth of the declarant [co-conspirator's] statement. Rather we are required to preliminarily determine, based on all the evidence presented, whether the statement falls within the ambit of Rule 801(d)(2)(E). By any reasonable measure we think these statements, too, fit well within the definition. The Defendant's argument really amounts to a claim that the out-of-court declaration of [the co-conspirator] ought not be given great weight because [the testifying witness] could not vouch for its accuracy. That claim goes to weight not admissibility, and, at all events, was available for the jury to consider.

5

*United States v. Marrero*, 708 F. Supp. 1279, 1286 (S.D. Fla. 1989) (Marcus, J.). Thus, the accuracy of the information that Ionov reported to the FSB has no bearing on its admissibility.

In any event, many of the reports and messages contain verifiably true information—to include photographs of the Defendants engaging in activities directed by Ionov, and for which the United States will introduce independent evidence to support that the Defendants had, in fact, engaged in these activities at Ionov's direction. And, to the extent that a handful of Ionov's reports contain inaccurate or exaggerated information—which just as likely originated with the Defendants as with Ionov—they are nevertheless intended to further the conspiracy's goals. All of the allegedly inaccurate information cited by the defense—such as inflating the number of protests that the APSP had conducted, augmenting the size of the protests, overstating the influence of the APSP within the United States, or exaggerating the success of their candidates for election—was plainly intended to enhance the APSP and Ionov in the eyes of the FSB. This type of boasting to obtain the confidence of Ionov's Russian government backers was intended to further the conspiracy's goals by keeping the FSB interested in the APSP. *See, e.g.*, *Siegelman*, 640 F.3d at 1181.

Indeed, even the Defendant concedes that these inaccuracies were likely intended to "impress the alleged FSB officers, perhaps in an attempt to earn grant money." Doc. 229 at 6-7. Increased Russian government funding was essential to furthering the goals of the conspiracy, as demonstrated by Ionov repeatedly using his

6

Russian government funding to host conferences and fund activities in the United States. *See, e.g.*, OA ¶¶ 1-2 (paying for Yeshitela to come to Moscow to "communicate on future cooperation"); *id.* ¶¶ 9, 11 (paying Nevel and Hess to draft a petition accusing the United States of genocide); *id.* ¶¶ 15 (using Russian government grant funding to bring Yeshitela to Moscow and solidify the conspiratorial agreement); *id.* ¶¶ 19-26 (paying the APSP to conduct a four-city genocide tour); *id.* ¶ 35 (paying for posters to be used at a protest promoting the secession of California); *id.* ¶ 79 (paying for Romain to fly to San Francisco to protest on behalf of the Russian government).

  Even if the Court believes that some of Ionov's communications with the FSB could theoretically fall outside the scope of the co-conspirator exception to the hearsay rule, this evidence is admissible as non-hearsay for reasons completely unrelated to its factual accuracy. At trial, the United States will be required to prove that the Russian government, through Ionov, was exercising direction or control over the Defendants' activities. The mere fact that Ionov was routinely messaging with FSB officers concerning U.S. political groups, receiving funding, meeting to exchange information, or other work-related topics is relevant and admissible to establish that he was working for the FSB.

  Last, the Defendant's argument that Ionov's communications with and reports to the FSB should be excluded under Rule 403 balancing is incorrect. Federal Rule of Evidence 403 provides that relevant evidence may only be excluded "if its probative value *is substantially outweighed* by a danger of . . . unfair prejudice, confusing the

7

issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." "The term 'unfair prejudice' as to a criminal defendant, speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged." *Old Chief v. United States*, 529 U.S. 172, 180 (1997).

Ionov's communications with the FSB are necessary to establish an essential element in this case—that the Defendants were, in fact, taking direction from the Russian government, not from a mere private Russian citizen. As such, while they are certainly prejudicial as they provide key evidence of the Defendants' guilt, they are not *unfairly* prejudicial because they relate only to the specific offenses charge— the Defendant's acting, via Ionov, as agents of the Russian government. *Id.* Finally, the United States only intends to offer into evidence a tiny fraction of Ionov's potentially relevant and admissible communications with the FSB in order to ensure that the jury's and Court's time is not wasted.

### IV. Conclusion

For the foregoing reasons, the United States respectfully requests that the Defendant's Motion be denied.

                                                    Respectfully submitted,

| | |
|---|---|
| ROGER B. HANDBERG<br>United States Attorney | By: *s/ Daniel J. Marcet*<br>DANIEL J. MARCET<br>RISHA ASOKAN<br>Assistant United States Attorneys<br>Florida Bar No. 0114104<br>400 N. Tampa St., Ste 3200, Tampa, Florida<br>813/274-6000 \| Daniel.Marcet@usdoj.gov |
| JENNIFER K. GELLIE<br>Acting Chief, Counterintelligence<br>and Export Control Section | By: *s/ Menno Goedman*<br>MENNO GOEDMAN<br>Trial Attorney, National Security Division<br>950 Pennsylvania Ave. NW, Washington, DC<br>(202) 451-7626 \| Menno.Goedman@usdoj.gov |

U.S. v. Ionov, et al.                                              Case No. 8:22-cr-259-WFJ-AEP

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 26, 2024, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

Ade Griffin, Esq.
Leonard Goodman, Esq.
Mutaqee Akbar, Esq.
Mark O'Brien, Esq.

I hereby certify that on August 26, 2024, a true and correct copy of the foregoing document and the notice of electronic filing were sent by United States Mail to the following non-CM/ECF participant(s):

Augustus C. Romain, Jr.
Inmate ID: 54801510
Citrus County Detention Facility
2604 W Woodland Ridge Dr.
Lecanto, FL 34461

*/s/ Daniel J. Marcet*
Daniel J. Marcet
Assistant United States Attorney
Florida Bar No. 0114104
400 N. Tampa St., Ste. 3200
Tampa, FL 33602-4798
Telephone: (813) 274-6000
E-mail: Daniel.Marcet@usdoj.gov