UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

CASE NO. 22-CR-259-WFJ-AEP

UNITED STATES OF AMERICA,

vs.

OMALI YESHITELA,

    Defendant.
_____/

**<u>SENTENCING MEMORANDUM</u>**

    Pursuant to 18 U.S.C. § 3553(a), the Defendant, Omali Yeshitela by and through undersigned counsel, respectfully requests this Honorable Court to impose a sentence sufficient, but not greater than necessary in conformity with the factors found in 18 U.S. Code § 3553(a) and for grounds in support of said motion states as follows:

    It has been over ten years since the Supreme Court released the district courts from the mandatory Sentencing Guidelines in *United States v. Booker*, 543 U.S. 220 (2005). In restoring the district court's discretion, the Supreme Court held that the Guidelines are just one of several factors mentioned in 18 U.S.C. § 3553(a) that the court must consider in imposing a reasonable sentence. *Id.* at 264. In the wake of *Booker*, it is essential that district courts make an "individualized assessment based on the facts presented." *Gall v. United States*, 552 U.S. 38, 50 (2007). The Supreme

Court emphasized that a sentencing court "is in a superior position to find facts and judge their import under § 3553(a) in the individual case[,] [because] [t]he sentencing judge has access to, and greater familiarity with the individual case and the individual defendant before him than the [Sentencing]Commission or the appeals court." *Id.* at 51-52(quoting *Rita v. United States*, 551 U.S. 338, 357-58 (2007)).

The United States Court of Appeals for the Eleventh Circuit has construed *Booker* to mean that "district courts are obligated to impose a reasonable sentence, regardless of the Guidelines range, so long as the Guidelines have been considered." *United States v. Hunt,* 459 F.3d 1180, 1184 (11th Cir. 2006). The court held that there is no presumption of reasonableness for sentences within the advisory guideline range. *Id.* at 1185; *United States v. Campbell,* 491 F.3d 1306, 1313-14(11th Cir. 2007). In finding that there is no presumption of reasonableness, the court noted that "[t]here are [] many instances where the Guidelines range will not yield a reasonable sentence." *Hunt,* 459 F.3d at 1184. The court further instructed that "the Guidelines are to serve as a starting point for consideration as to whether a given sentence is 'reasonable' in view of the entirety of *section 3553(a)." Id.* at 1185.

Similarly, Judge Rosemary Barkett, then of the United States Court of Appeals for the Eleventh Circuit, recognized the importance of not deferring to the Guideline in imposing a sentence. In *United States v. Docamp, Jr.*, Judge Barkett

found that the district court should start the imposition of a sentence with a calculation of the Guidelines and then permit the district courts to "tailor the sentence in light of other statutory concerns," not presuming that the Guidelines range is necessarily reasonable. 573 F.3d 1091, 1105 (11th Cir. 2009) (Barkett, J., concurring in part and dissenting in part).

As this Court is well aware, the factors provided in § 3553(a) are intended to guide the sentencing judge in determining a reasonable sentence that is "sufficient, but not greater than necessary," to achieve the goals of sentencing. Those factors include the history and characteristics of the defendant; the nature, circumstances, and seriousness of the offense; the need to protect the public; and the need for deterrence and rehabilitation. § 3553(a)(1)-(2).

In the Pre-Sentence Investigation Report (paragraph 87) the felony for which Mr. Omali was found guilty at trial has no applicable guideline range. Therefore, the provisions of 18 U.S.C. 3553 apply and the applicable penalty is limited by statute which allows for the maximum term of imprisonment of five years.

I. **The Nature, Circumstances, and Seriousness of the Offense (18 U.S.C. §3553(a)(1) and (2)(A))**

The nature and circumstances of this offense are that this was a nonviolent crime that ultimately only involved spoken words. Mr. Yeshitela is not denying that he travelled to Russia, met with Aleksandr Ionov and did enter into a partnership with Mr. Ivonov. However, none of the actions that Mr. Yeshitela was involved with

3

on behalf of African People's Socialist Party (hereinafter referred to as "APSP") benefited either Mr. Ionov or the Russian Government, because in the end, nothing was ever accomplished by either party that caused harm to the United States of America.

In this case, the Government has filed a Notice of Supplemental Authority asking this Court to consider Judge Merryday's thorough and thoughtful explanation of an appropriate sentence for a violation of 18 U.S.C. 951 as happened in United States v. Ping Li, 8:24-cr-334-SDM-NHA (hereinafter referred to as the "Li" case). In the Li case, the Court imposed a 48-month BOP sentence, citing that the Defendant provided useful information to a foreign power, concealed his actions for over 10 years and then when confronted by authorities he was initially deceitful, thereby showing that what he was doing was in fact wrong.

However, in the case at bar, Mr. Yeshitela never provided any information to Russia, never hid what they were doing and when confronted did not attempt to conceal their actions, words or political views. This leads one to believe that Mr. Yeshitela, Hess, Nevel and Romain were not aware that their actions were in fact unlawful. Had Mr. Yeshitela, Hess, Nevel and Romain reported their involvement with Russia and Ionov to the Attorney General's Office as required by 18 U.S.C. 951 they would have been in compliance with the statute. Furthermore, nothing in this case reflects that any of the Defendants, most specifically, Omali Yeshitela,

4

knew or had any knowledge of the requirement to register with the Attorney General's Office.

## II. The History and Characteristics of the Defendant(18 U.S.C. §3553(a)(1))

Pursuant to § 3553(a)(1), in determining a reasonable sentence, the Court "shall consider . . . the history and characteristics of the defendant." Thus, a judicial determination of a just punishment, must of necessity, involve careful inquiry into the life history and character of the person who is to be sentenced. *See* § 3553(a)(1).

Omali Yeshitela has lived a truly extraordinary life outside of the commission of the present offense. Although some people do not agree with Mr. Yeshitela's political views, Mr. Yeshitela's "history and characteristics" point convincingly to the fact that a sentence of imprisonment would constitute punishment far "greater than necessary" to accomplish the goals of sentencing and would therefore be excessive under § 3553(a).

### A. Family and Community Support

Omali Yeshitela was born and raised in St. Petersburg, FL. He was raised by his mother and father in an area known as the "Gas Plant area," and lived in a close-knit community and always felt loved by his family and neighbors. Mr. Yeshitela's family is made up of three brothers and three sisters. He has a splendid relationship with his siblings and they talk frequently.

Mr. Yeshitela has seven children, all of which reside in or about the north Florida area. Mr. Yeshitela has been married to Ona Zene Yeshitela since 2006 and describes his marriage as a "partnership" in every sense. Mrs. Ona Zene Yeshitela supports her Husband 100% in his professional and personal life endeavors.

Mr. Yeshitela was a member of the United States Army from 1958-1963, when he received an Honorable Discharge. Mr. Yeshitela was a soldier in the United States Army and in Berlin Germany at the time the Berlin Wall was constructed.

Mr. Yeshitela's employment and activism history is extensive. At a young age, he held a position at the St. Petersburg Times Newspaper as a "copier" and ultimately began publishing articles in the newspaper. In 1966, during the Civil Rights Movement, Mr. Yeshitela joined the Student Non-Violent Coordinating Committee and worked tirelessly in the Voter Education Anti-Poverty movement.

In 1968, Omali Yeshitela created and published the "Burning Spear Newspaper," which remains in existence today. It is important to note for this case, that as early as December 22, 1969, in the very first issue of the Burning Spear Newspaper, Mr. Yeshitela explores the issue of genocide and its impact on Black people in America. The issue of genocide and reparations has been on the forefront of Mr. Yeshitela's advocacy throughout his life.

In 1972, Omali Yeshitela formed the African People's Socialists Party in an effort to lead the struggle of the African working class, and all oppressed people,

against capitalism and colonist domination. Mr. Yeshitela has remained the Chairman of the APSP since that time. While you might not agree with Mr. Yeshitela's methods and views it is apparent that he has had a positive impact in the community within and outside the United States.

Mr. Yeshitela and the APSP implemented numerous organizations with the hope of benefiting the African American community and has committed himself and the APSP to the goal of transforming the conditions of poverty and oppression faced by the African community. For example, the APSP formed organizations such as the International People's Democratic Movement, the All-African People's Development and Empowerment Project, the African National Women's Organization, the African Socialist International, the Uhuru Solidarity Committee, African Independence Work Force Program, International People's Democratic Uhuru Movement, African People's and Defense Fund, Black Star Enterprises and numerous grass roots and community organizations.

The APSP's grass roots, economic development Institutions and community projects include, amongst others: the Uhuru Design Studio, Uhuru Foods and Pies, Uhuru Furniture and Collectibles, Uhuru Jiko, Zenele Consignment (providing employment for community members), Akwaaba Hall, Black Power 96.3, Burning Spear Publications, One Africa! One Nation! Market Place, Uhuru Planet, Farmer's markets, Community basketball court, Huduma Zamaisha (life services- providing

housing, childcare, food access, survival skills and Doula training), Community gardens, project Black Ankh (providing healthcare education), and the Marcus Garvey Youth Program (focusing on access for children re: skill building workshops and access to African history).

Mr. Yeshitela is also a profound lecturer and publisher. He has traveled worldwide in his efforts to educate and promote peace, dignity and the right to build a prosperous life through labor and in the interests of Black and African people globally. Omali Yeshitela is the author and publisher of numerous pamphlets and books including, On African Internationalism (1978), the Struggle for Bread, Peace and Black Power: Political Report to the First Congress of APSP (1981), Social Justice and Economic Development for the African Community: why I became a revolutionary (1997), An Uneasy Equilibrium (2014), Vanguard: the Advanced Detachment of the African Revolution (2019) and The Verdict is In; Reparations Now (2023).

Mr. Yeshitela's extensive contributions to the community are further evidenced by the 644 letters in support that have been filed in this case under separate filing for this Courts review. It is important to note that these letters provide significant guidance and insight as to the impact of the APSP and Mr. Yeshitela's lifetime commitment to the liberation of African people globally. The 644 letters of support also shed light on the immeasurable importance of the grass roots and local

improvement measures taken by the APSP. It is clear that Mr. Yeshitela, has truly transformed the lives and communities of those he has been in direct and indirect contact with throughout his lifetime. (Please also refer to Attachment "A"- list of names of people who wrote letters in support of Omali Yeshitela).

**B.**     **Minimum  Prior Criminal History**

Mr. Yeshitela is an 83-year-old man who hasn't had any contact with the criminal justice system in over thirty-seven years. He has zero criminal history points and, therefore, is in Criminal History Category I. His criminal history reflects that he has no adult or juvenile convictions. A defendant's criminal history is informative to his or her general character and also serves as a predictive indicator of the likelihood of recidivism. "[A] district court may weigh a defendant's lack of criminal history, even when the defendant has been placed in a criminal history category of I, in its § 3553(a) analysis." *United States v. Huckins*, 529 F.3d 1312, 1318 (10th Cir. 2008); *see also United States v. Jarvi*, 537 F.3d 1256, 1263 (10th Cir. 2008) ("We have now held that district courts have broad discretion to consider individual characteristics like . . . criminal history in fashioning an appropriate sentence under 18 U.S.C. § 3553(a), even when disfavored under the Guidelines or already accounted for in another part of the calculation."); *United States v. Montgomery*, 165 Fed. Appx. 840, 843, 2006 WL284205, 2 (11th Cir. 2006) (unpublished decision) (Eleventh Circuit, in affirming significant downward

variance as reasonable, noted that "this crime was Montgomery's first and only offense.").

Second, the Court may also consider Mr. Yeshitela's total lack of any criminal history points as relevant to the risk of recidivism and the corresponding need to protect the public.  See, e.g., United States v. Roque, 536 F.Supp.2d 987, 990 (E.D. Wis.2008) ("defendant's minimal prior record and the positive changes he has made in his life" justified finding that he "did not present a threat to the public.").  Given that Mr. Yeshitela has no criminal history points, and his advanced age of 83, he has an excellent chance of rehabilitation, and his risk of recidivism is extremely low.

### III. The Need to Afford Adequate Deterrence to Criminal Conduct (18 U.S.C. § 3553(a)(2)(B))

Any restraint on an individual's liberty is substantial, most specifically to Omali Yeshitela. Mr. Yeshitela's life history and characteristics strongly indicate an unlikely risk of future criminality.   Omali Yeshitela has led an exemplary life.

The Ninth Circuit has held that § 3553(a) does not require the goal of general deterrence to be met through a period of incarceration. *United States v. Edwards,* 595 F.3d 1004, 1016 (9th Cir. 2010).  The court referenced legislative history in support of its position that incarceration is not the only means of general deterrence: "It may very often be that release on probation under conditions designed to fit the particular situation will adequately satisfy any appropriate deterrent or punitive purpose." *Id.* (quoting S. Rep. No. 98-225, at 92 (1983)).  If this were a case of

violence or even a case where Mr. Yeshitela was the leader of a conspiracy to distribute drugs on a large scale or commit substantial fraud or Theft, then of course a lengthy prison sentence would be appropriate as a greater deterrence to those high-level distributors of narcotics or others carrying out crimes of Fraud or Theft. Those are not the facts of this case and do not reflect the unsophisticated and isolated nature of this crime.

## IV. The Need to Protect the Public from Further Crimes of the Defendant, § 3553(a)(2)(C)

The isolated nature of the offense, Mr. Yeshitela's lack of substantial criminal history, and his compliance while awaiting sentencing suggest that this Court should not be overly concerned with protecting the public from Mr. Yeshitela committing future crimes. As previously mentioned, he has not been involved with the criminal justice system since 1990. Neither Mr. Yeshitela nor his family has any known criminal affiliations. Most importantly, as a result of this felony conviction, Mr. Yeshitela will now be labeled a convicted felon and has lost many important constitutional rights, including the right to vote. A lengthy incarceration may not be necessary to protect the public. *See United States v. Baker,* 502 F.3d 465, 468 (6th Cir. 2007) (holding that sentence of five years' probation not substantively unreasonable where defendant "had done 'exceedingly well' while under supervision, that incarceration was unnecessary to protect either his wife or the public, and that it could 'fashion a sentence that will reflect the seriousness of this

11

offense, promote respect for the law and provide just punishment without placing this man in confinement.'").

In a situation like this, where Mr. Yeshitela does not pose an imminent threat to society and there is no need to protect the public, this court can fashion a form of punishment in imposing a sentence that excludes incarceration. *See Roque,* 536 F.Supp.2d at 911 (finding that under the circumstances, where defendant served as sole provider for family and protecting the public did not require imprisonment, variance and probation sentence appropriate).

### V.    Conclusion

A probationary sentence is clearly warranted in this case for the reasons correlated with the statutory sentencing factors, the most prominent of which is related to assessing the personal characteristics of Mr. Yeshitela, the nature and circumstances of the offense, deterrence, and recidivism.

The mitigating theme predominant in this Sentencing Memorandum is Omali Yeshitela's amenability to compliance, deterrence and improbable recidivism based upon the nature and circumstances of the offense and his own personal history and characteristics. A probation sentence would reflect the seriousness of the offense and protect the public. Accordingly, a sentence of probation will adequately punish him, but not be greater than necessary, to meet the statutory goals of § 3553(a).

**WHEREFORE,** based on the arguments set forth above, Omali Yeshitela respectfully requests a sentence of probation.

Respectfully submitted,

ADE A. GRIFFIN, ESQ.
Griffin Inskeep Law, LLC
Harvey Building
224 Datura St, Suite 900
West Palm Beach, Florida 33401
ade@agtilaw.com
Pleadings: service@agtilaw.com
(561) 320-6006

By:   */s/ Ade A. Griffin, Esq.*
ADE GRIFFIN
Florida Bar No. 0771961

## CERTIFICATE OF SERVICE

I hereby certify that on December 11, 2024, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

By:   */s/ Ade A. Griffin, Esq.*
ADE GRIFFIN
Florida Bar No. 0771961